On behalf of the F-Con Cross-Athlete, Mr. Nathan J. Noble. On behalf of the Athlete Cross-Athlete, Mr. Terry F. Morales. Gentlemen, before we start, as you'll notice there is an empty chair. Justice Catherine Zinoff is the third member of this panel. Although the orals obviously were set many weeks ago, she was unexpectedly called out of town today. She was not able to be here. We will hear, of course, hear your arguments and deliberations will follow after Justice Zinoff has had an opportunity to review the oral recording of this morning's argument and then a disposition will be issued directly after that. So gentlemen, if you're ready to proceed. May it please the Court. Good morning, Your Honors. Everyone's case is probably posited to you as being interesting, but I do believe there are some interesting legal issues as well as factual things that need to be addressed and that is why we're here. So let's get to it. First, because this review is de novo, I want to really take some extra time to emphasize to see whether or not you have any predispositions with respect to some of the arguments I've made in my brief and if so, if I could address those. We're not going to be flagging our predispositions. Very well. The questions might indicate some questions. Very well, Judge. I anticipate maybe a few of those questions, hopefully. How about this one? Yes. The trial court, with regard to the fee petition, 137 fee petition, the sanctions. Yes, Judge. Determined that he did not believe that sanctions could be awarded in this type of situation. What's the standard of review on that question? Judge, the standard of review on the... The question as to whether or not sanctions are available in this setting, is that a question of law? I believe that's a question of law, but that Judge Tobin was able to look at the facts in order to make a determination through the legal standard, and that legal standard, I believe, was outlined in my reply brief, turning your attention to the patent case, 406 LAPP 3D. It's a second district case, 2010. And the court there said a court should not impose sanctions on a party for failing to conduct an investigation of facts and law when the party presents objectively reasonable arguments for his or her position, regardless of whether those arguments are unpersuasive or incorrect. Well, that case in that language goes to how the court should apply its discretion in looking at the facts. The question I have for you is, are 137 sanctions unavailable in a tax deed case as a matter of law, which apparently the child court determined that. No, I believe it would be available. I think to say anything contrary would be absurd. Does that answer the question? I think it does. So the follow-up question, by finding that your client engaged in fraud in his pleading, doesn't that mean that his affidavit was not, quote, well-grounded in fact under 137, that he committed a fraud on the court, therefore the pleading is not well-grounded in fact if it is based upon fraud? That would be a true statement. However, I'm here both challenging the basis of that fraud as well as, I guess I would say, that Judge Tobin could consider other things in making a determination as to what that sanction would be. If he were to determine he was going to apply sanctions? Correct, correct. Okay. Okay. So turning your attention to, I think, you know, the elephant in the room, was this affidavit submitted to induce Judge Maher, who was the one on the bench, to issue this tax deed? And when we look at the affidavit, I'm sure you have adequate time to do so, it says that unless otherwise here and after stated, and I'm referring to the appendix on page 35. Is that paragraph 16? Correct, correct. You know, such inquiry consisted of a search of those. Diligent inquiry. Yeah, diligent inquiry. And then it says, of course, and this is the important stuff, inquiry at applicable addresses, if any, listed in the pertinent documents in the office of the recorder of deeds. And then it goes on to reference other documents. In cross-examination, much is made of my client's caving to what I said were falsely premised questions that, unfortunately, I didn't object to. I will admit to that. I didn't catch the false premise as it was being asked. And that false premise was in the transcript. It's clear that he was being asked if he visited the address. And, of course, my client says, no, I didn't visit the address. But you said here, and he didn't understand the false premise. I didn't catch it at the time. Judge Tobin, in his decision, you know, actually stated that my client stated in his affidavit, not even testified, but stated in his affidavit that he visited the addresses and that he didn't do so. I mean, that's true, but my client did not state that he didn't visit the property. But my client never stated in his affidavit that he went to these addresses. There's two addresses that are at bar and at issue that are at least interesting. One is an address when, you know, you first buy the property and you sign up on the tax rolls, and that's the first address that was there. And then, subsequently, the record is clear. Mr. Traska updated his information, changed the address to the Barrington address in 130 Rainbow Road. And at that point, because within the relevant inquiry time period, the three- to six-month period before the tax deed was issued, because a response came back from that second address that the forwarding address had expired, it's reasonable for my – and my client knew that. There was testimony to that. It's reasonable to believe – why would – if a forwarding address has expired, why is it reasonable to believe that that person, that property owner, is still living at that address and that any further inquiry is even needed to see if that person is living there or still there when the forwarding address has expired? I think that's incredible. And I think that that, along with whether or not he actually visited, when you tie those two together, I think the judge misinterpreted not only the facts and the testimony that was given, but the affidavit itself and what it states regarding the operative nature or just ignore the operative nature of, you know, applicable and, you know, arguably, if any, immediately after that. It's not just the addresses. It's the names on the documents. Sure. And it's – the question is whether or not your client perpetrated a fraud on the court by saying in his affidavit that he conducted a diligent inquiry to discover the owner or interested party in the property, correct? Absolutely correct. That's the ultimate – that's the big picture item. Correct. That's – yes. And what does diligent inquiry mean? I'm glad you mentioned that. I'll jump to it. There was a 4th District case that just came out about 14 days after I filed my reply that – where the 4th District went on in pretty good detail to talk about what diligent inquiry is. That case is Ballinger v. Moore, and that's 2014 L.A. 4th, 130261. And in that case, that was a case where they – 140261. Yes, 140. I do have copies if your honors would like or counsel. I can hand that to you after, but I think it's important that this court has a chance to review that because there was a pretty – a pretty detailed discussion of what the diligent inquiry is. Although it is in a different context, in that case there was a tax deed that was issued, but the trial court found it to be issued not fraudulently but not with sufficient notice to proper parties. In that case, there was a probate estate and there were heirs, and not all the heirs were given notice, and therefore the – but it was posited to the trial court that the tax deed petitioner gave notice to everyone, found everyone well. It turns out if he would have done due diligence on the tax records, they would have found – within that county, they would have found who the interested parties were, and on that basis the trial court granted a motion for summary judgment to vacate that tax deed. Now, in this case, it's a little bit different because that case was more focused on finding the identity, the who. But here we already know the who. This is the – it's a more of a where question. And so while the diligence, you know, discussion I still think is relevant, it's a little bit apples and oranges, and it was under subsection 4 of the 45 – excuse me, 22-45. We're on 22-45.3, and they reversed it on a 4, which is – I don't want to – Yeah, correct. Am I correct that a diligent inquiry isn't what a reasonably diligent person would do, would undertake to discover the fact, what a diligent person would usually and ordinarily do to discover a fact in which he is interested in? Yes. In this case, it's the address of the owner or the interested party, correct? Yes. And your client has a wealth of experience in this area, correct? That's basically his business now. He does them a lot. Well, he testified that this is essentially his business. He's been doing it for years. Correct. 250 or so examples and 30-some cases that he's filed in court pro se. Correct. Correct, Judge. And I think it's important to – I'm sorry. What diligence did your client undertake? Yes, Judge. The diligence that was undertaken is outlined in his affidavit, multiple things. He attempted to – he interviewed at least two sets of neighbors. In his affidavit 16.1, 16.2, he went to the – physically went to the address. It was a vacant piece of farmland. There's testimony to that as well. That is in his affidavit. Well, it was vacant, but there were also crops growing on it. Correct. There were crops growing on it, and the relevant period of inquiry was from May to August. So they're not planting. It's already in the ground, and they're not harvesting yet. Whether or not my client could have attempted to maybe catch someone tilling at some point, who knows? But I don't think he's obligated to just camp out and sit there until someone maybe, maybe doesn't come on. Okay, let's get back to the diligence. Sure. So he talked to two neighbors and went out and saw that there were crops growing on the property. Yes. What else did he do? He searched the county records to ascertain – And that would be Boone County. Boone County, correct. He searched both in his affidavit. There are three things in his affidavit that he verified. One was the recorders of deeds, you know, and searching through that. The other is the probate and civil division, you know, records within the county. And then, of course, the county collective records, the Boone County Treasurer's Office. And what he did find was the addresses, or at least what was the current updated address of the property owner, which was out of county. And then he also – well, he verified that the last deed of record had the two owners being the Traskas, his and hers. Other things that – He made no effort to contact the attorney, correct? Correct. He made no effort to contact the attorney. The deed was about eight years old? The deed was eight years old. And his testimony was that, in his experience, preparation of documents for purchase of real estate is, quote, unquote, a one-shot deal. One-shotter. Is that a question of fact? Maybe. Is it unreasonable? I don't think so. Well, the judge weighed the evidence. He didn't believe it. Maybe. But that one is more of a legal argument than a factual one. And contacting the attorney is a factor that courts have looked to in determining whether – or trying to contact the attorney. Courts have looked to in determining whether or not somebody exercised due diligence, correct? Correct. But in that case that is cited by my opposing counsel, that is in the context where the property owner, as well as the attorney, are all located within the same county where the property is located. And I believe that's relevant because if we look at the statute and what is required under the statute, under 235 ILCS 200-22-15, the diligent – there's three times in that statute the words diligent inquiry are used. And it starts off basically saying that upon all other owners and parties interested in the property, if upon diligent inquiry, they could be found in the county. And that is – You're leaving out the rest of the story. That is only with respect to the form of notice. That is – there are no county boundaries with respect to diligent inquiry to find the owner or interested parties. And if there was, would you agree that that would be unconstitutional? Yes. If there is an address – If we read the statute that way, the way you presented in your brief, if we read it that way, would you agree that that would be unconstitutional? Because it would – that would not accord with the concepts of due process and providing notice to owners and interested parties. Possibly. And I would answer this way. It's presumed that if you're going to own a piece of property and you're paying taxes, that notice is going to go to a correct address so you can pay those taxes. And I believe the state legislature understood that. Okay, so your position is you just simply take whatever the address that the tax bill went to, and if you can't find somebody there, that's diligent. No. You're required to do more than that. I do believe that. I don't think so. But when it comes to the statute under that same – what I'm talking about there, it spells out if after diligent inquiry that person cannot be found or served notice in the county, the second to last paragraph, Read the rest of it. I'm reading the third recitation of this. And I would say that ascertainable residence is the address that's on the tax records. And no other inquiry would be required to find an address. Is that your position? No, I still think other inquiry was required, and my client did do that. He did do an Illinois – a statewide Illinois – And that turned up what, the 10 different names? That turned up – I believe the testimony was 78 different results with the last name Traska, but none with Gregory, and none with starting – he used the letter G, excuse me. Judge Tobin, I think, just completely misconstrued the actual testimony given on that point, and I think that's very important. He said that the only way that my client could go down that track was to click some pay services, and that was not the testimony that was given at all. In fact, the testimony, as I outlined in my brief, says my client reviewed all of these things, reviewed all the Traskas, and none of them were G Traska, none of them were Gregory Traska. And so there was nothing to click, there was nothing to further inquire on, and that was a multi-base, if you're familiar with any of those there. There was an affidavit from Traska's attorney's paralegal that said she found Mr. Traska within five minutes. That was agreed to, that was a stipulation, right? Correct, and it was a stipulation because I believed it completely irrelevant because it's nowhere near the time period where the actual inquiry occurred. It is very easy in this age to seed yourself into existence and have all the – I've had Westlaw reps and Lexis reps come up and we'll get you listed and everything, and you'll show up immediately. And if I were opposing counsel, I would have asked for IP addresses, asked for what computer was the search done from my client. You know, the types of clear and convincing evidence that he either didn't do it or that the name wasn't there during the relevant period of time I think could have been developed. I don't know why it wasn't, but again, it's not my client's burden to prove clear and convincing evidence of fraud. And I don't believe that stipulation lends itself to – I don't know if it was six or nine months. Did you raise those arguments in the trial court? Or are you raising it for the first time on appeal that it's irrelevant? No, I don't believe I'm raising it for the first time on appeal. Okay. Did I answer at least those open questions? You can proceed with your – I actually believe your time is up. Is it all up? You'll have a chance for rebuttal. Okay, I'll step down. Thank you. Thank you. Good morning, Your Honor. Good morning. It please the court. With respect to the issue that was just discussed about whether details concerning Miss Endy's affidavit were raised in the manner in which counsel suggested they were in the trial court, that is completely incorrect. They were not. Let's – let me talk first about standard of review. And the standard of review with respect to the initial appeal, the finding that the deed was procured by fraud and or deceit, is against the manifest weight of the evidence. The standard of review with respect to the sanctions motion, which we have brought, is an abuse of discretion based obviously on a finding that we believe this court will affirm that there was fraud and that fraud intentional misled the court. And the result of that intentional misleading was the potential loss of a valuable piece of property plus the incursion of significant expense to retrieve that property and to reverse and vindicate that fraud on both the court and on Mr. Trask. Let's turn to what the court had in front of it with respect to Mr. Giordano. Mr. Giordano's counsel makes the point that his client was somehow deceived in a colloquy between me as trial counsel and his client. Well, here's what he was asked about the visits that he now says he misunderstood. He was asked if he didn't otherwise state in the affidavit that he didn't go to the Rainbow Road property, and he said apparently not. So the affidavit was false or is false, I inquired. No, it was probably an oversight. It's an oversight, but it's also false. Well, technically, I guess it is. The point is Mr. Giordano understood that it was the affidavit that was the subject of the inquiry. Not the question, the affidavit, and he said it was false. Judge Tobin, in his commentary, in his memorandum decision of February 13th, specifically found that he did not believe Mr. Giordano with respect to that statement. Here's what Judge Tobin said. The affidavit as to his attempts to locate Traska asserts that he went to the last known address of Traska, i.e. 130 Rainbow Road, but he admitted he did not do so. This is Judge Tobin's finding. Giordano calls this a technical oversight, though the court does not believe that it was a technical oversight as a matter of fact and as a legal conclusion. Judge Tobin hit the issue dead on, and there is ample evidence to support it, and that evidence is Mr. Giordano's testimony before Judge Tobin at trial. Let's talk about another issue that Judge Tobin found. And that is no efforts were made to identify the farmer who was farming the land. Background here is a bit important. Mr. Giordano testified, and Judge Tobin heard, that he's farmed property in McHenry County since 1972, and he's intimately involved in the farming. He decides what to farm, and he takes half the crop and disposes of it on his own. He knows the industry. For ten years, he's had a piece of farmland in Boone County, in Florida Township, he so testified. He rents that. So, during the period when he knows the property's being farmed, and he understands the local farming industry, he makes no attempt to find the farmer. Now, Mr. Noble says he's not expected to camp out through the entire growing season, but that's the reductio ad absurdum argument. Nobody is suggesting that, but the record shows, and there's a dispute in the record, but let me take Mr. Giordano's position on it. The record shows that he got the deed on March 9th, and within six days, within six days, he found the farmer who was farming the land. Mr. Kelm. Mr. Kelm. Six days. Not months through the growing season. Now, let's look at Mr. Manning. The court had colloquy with Mr. Noble. I won't repeat that. And your point is that, with respect to his affidavit, this testimony also goes to the affidavit because it goes to the diligent inquiry. The trial court was not just looking at one fact or two facts, he was looking at a multitude of facts that showed that that affidavit was false. Absolutely correct. That is correct. It's not just the diligent inquiry, it's also the misstatement in the affidavit that says, unless otherwise indicated, I did the following, and I made inquiry at the addresses in the county records. And there are at least three such addresses that he did not make inquiry at. He didn't make inquiry at 130 Rainbow, which we've spoken about. He didn't make inquiry with respect to the address on Old Island. And he made no effort to reach Mr. Manuel, whose address was right on the face of the deed. He moved his suite, though, didn't he? He moved his suite. Mr. Manuel is a partner of ours. We have been in that building since the inception of the firm. And Mr. Manuel so testified. We are well known in the building. We are a major tenant. Mr. Manuel, at the time of his testimony, I believe, had been with the firm well over 20 years. We're not an unknown commodity. What about the court's, you know, going back to the 137 issue, the trial court determined, and he said, Traska's negligence was the source of the problem. And because, quote, he said everything in motion, and compared the case to Paul's graph, said, I'm not awarding sanctions. Your Honor, I want to make sure. Is that a legal question or is that a fact question? Is that a legal question? Is that a legal question that because somebody else set this issue in motion, fees are not available? No. Two responses. Number one, whatever the court found with respect to Mr. Traska does not influence the underlying determination of Mr. Giordano's fraud. I don't think your court's inquiring about that. No. But with respect to the discretionary issue, I don't believe that it is a legal question. Because I think the focus has to be on Mr. Giordano's conduct. Now, if Mr. Traska's conduct might be ameliorating the finding with respect to some aspect of the scope of the sanctions, that some part of the procedures might have been extended because of that conduct, then arguably the court could consider that under a discretionary standard. But I think to vindicate, and I think that the case law, and we've cited it, and I won't delve into the cases here unless you want me to, I think the fundamental principle here is we can't have people stealing other people's property in violation of the requirements of the law. And that's what happened. That's exactly what happened. Mr. Giordano filed a petition, he misled the court, the court on at least three occasions, twice during the motion for rehearing, put the blame for exactly on Mr. Giordano, and the court did it in its earlier memorandum decision in January of 2013. Well, shouldn't courts be reluctant to award sanctions when the party is pro se? Mr. Giordano, and the record shows this, has previously been sanctioned by other courts, and that's in the record. And he was sanctioned for abusive conduct. What page of the record is that in? Your Honor, offhand, I don't have it, but we'll look for it. It was submitted as a trial court evidence, a piece of evidence. And was it received? Yes, sir. So, Mr. Giordano... There was no bathe in the woods, in other words. Absolutely not. Absolutely not. Mr. Giordano was knowledgeable. The order, if I remember correctly, was issued by the Circuit Court of DuPage County. And we will try to get that for you. Counsel, I have a question. Yes, sir. It's not the worst I've been called to. Do you believe, based on the representations and the findings made by the trial court with respect to the 137 petition, did the court understand that it had the discretion to impose fees or not? Or do you think the court looked at it and said, because the court found that your client sort of started the ball rolling by not filing his taxes appropriately, that therefore sanctions did not apply? Or did he consider the totality of the circumstances and in the exercise of his discretion, and we'll decide later whether it was an abuse, but in the exercise of his discretion found, I'm not going to impose sanctions. I think Judge Tobin was knowledgeable with respect to the standard. The issue was certainly briefed. I don't think his determination in the judgment order gets into that issue, nor do I think his oral decision at the time of the motion for reconsideration. So you're asking us then to find that it was an abuse of discretion, not that the court was mistaken as to whether or not it had discretion. That is correct. I think Judge Tobin understood that it was within his sound discretion. And what would you point to as the abuse of discretion or as the trial court's abuse of discretion? The failure to impose Rule 137 required penalties on someone who intentionally misleads the court and causes a party and the court to... Well, I appreciate that would be a basis to do it, but where is the abuse of discretion for not doing it? Failure to exercise his ability to impose sanctions under 137 in light of those facts is an abuse of discretion, and that's our position on appeal. The facts as they are, in your opinion, would warrant sanctions, and therefore, because the conduct from your perspective is so egregious, and there is a history of this conduct, that therefore the court abused its discretion. Now, it's words in your mouth, but I'm trying to... Yes. Okay. Yes. Let me return just briefly, and I think my time is close to up, to the Internet search. Again, Mr. Mokau said that his client misunderstood the caliphy and the like. Well, again, the trial testimony just isn't consistent with that. First of all, Mr. Giordano submitted an affidavit in which he said he looked for Mr. Traska. He said he found 89 Traskas, which is not a very common name in Illinois. It wasn't Jones or Wilson. It was Traska, and he went no further because he would have to pay a fee. So Judge Tobin found. Mr. Giordano's counsel challenges that finding. Here's the trial court testimony. So you had to go to a different service. The service, the antecedent service, was the Zabas Search. And it's a pay-type service. You have to pay a fee. You have to pay a fee to go look. And did you do that? No. Well, I can't imagine... So are you suggesting then, almost as a matter of law, that diligent inquiry requires, in this day and age, something more than perhaps it required 15 years ago? I think that diligent inquiry is appropriately characterized, as Judge Burkett said a few moments ago, as an inquiry that a reasonable person would make if he wanted to ascertain the fact that he was trying to seek out. Now, here... I'm sorry. It's okay. Go ahead. Obviously, his conduct tells us... Mr. Giordano's conduct tells us he was trying to find Mr. Traska. He looked for Traska in Illinois. And he apparently had some leads. And he dropped it. And his excuse is, it was another step that might cost me a little money. Well, if you're in this business, you spend money... Was your client one of the 89? I'm sorry? Was your client one of the 89? We don't have that list, Your Honor, so we do not know. And it is to horse the record, but there's an opportunity to find our client in his auto search. Was there a... Would he have been found at the operative time, regardless of whether he's findable today? Would he have been found during the operative time of the search? Your Honor, we, very quickly, within a matter of months of the time that Mr. Giordano was supposed to look for Mr. Traska, we found Mr. Traska, and that's what the epidemic of Missendi shows. We made an effort, again, to horse the record, to do... Oh, you're both arguing outside the records. I'm trying to answer your inquiry. But the answer is, I can't go back in time, and we don't have the information that allows us to. Take judicial notice that the Internet existed at the time, and that's the testimony that he gave. Right. That is exactly right. The focus here on the underlying decision, the finding of fraud and abuse, is there were multiple things that Mr. Giordano could have done that he said or implied that he did, and he didn't do. And Judge Tobin looked at him, listened to the testimony, and said, I don't believe you. I don't believe your story. And he didn't say it once. He said it three times, once in his memorandum decision, perhaps even twice there, and twice more on the motion for re-hearing. One more question. The court also found that your client, Mr. Traska, was not honest. I understand what he said. Does that factor into the 137? You'll have more time, but the 137. I'm not sure. Is that a reason to deny sanctions under 137? I don't know that that issue was joined with respect to the sanctions motion. Well, we can look at any basis in the record to affirm that. That I think is correct. But I would argue that even though, as I did a moment ago, that even though there is that finding, that nonetheless, the need to vindicate, in some level, the fact that the court was defrauded and misled, and a very important system was intentionally undercut, outweighs any negligent finding. If there wasn't such a finding, with respect to my client. They are apples and oranges. Your client's conduct perhaps would reduce the amount of sanctions, but not to vindicate. I think that is an issue for the trial court to evaluate. I don't believe that issue was evaluated. Well, the law is well settled that someone's failure to notify the clerk or the collector of the change of address does not waive the due process requirements for notice, correct? I believe the law has been well settled that notice requirements are the best notice practicable under these circumstances. That is a constitutional standard that is at least 100 years old, and the Illinois Supreme Court has adopted that time and time again. And we have a set of circumstances here where there were multiple opportunities to find Mr. Traska, and most importantly, Mr. Giordano understood that he had to tell the trial court that he took advantage of those opportunities, and he said he did, but he did not. And that's what happened. That's what Judge Tobin heard during the course of the trial, and that's the basis for denying this appeal. I believe my time is up. Thank you. If I may, I'll address a few of the sanction issues, the prior sanction. The prior sanction was for my client, Pro Se, using the same argument a second time when he had an ordinance violation for not wanting to mow a parkway. That's all it was, and Judge Tobin was aware of that. With respect to the Internet search, I think it's important, just because I don't believe the record was accurately reflected here. The testimony was, question, so did you whittle that down, referring to the searches? Answer, I looked them over, there was no Gregory Traska on there, no G. Traska and no Gregory Traska. Question, but you only looked, so you found G. Traskas? Answer, no, there were none. And it goes on, and questioning, to get more detail, perhaps get an address from North Barrington, Furnished Carpentersville, you had to use the ZABA system and make a payment. To get more detail, did you not? Answer, that is not correct. Question, well, you get a city and you get a name. Now, if you wanted to get more detail, like a mailing address or telephone number, what step would you next take? You have to go to a different service. But my client had already testified, there was no name, there was no G. Traska and there was no Gregory Traska to click on. So this is an apple, orange is bait and switch with respect to what was there and that my client didn't click on. There was nothing for him to pay for, and I just want to make that clear with respect to his testimony. And I believe Judge Tobin did get the characterization of that testimony wrong. What about his, the affidavit saying that he had gone to the Rainbow Road property? The affidavit does not say that, and I will, there was, on rebuttal, there was testimony given from my client regarding what's an applicable address. Because that, and you probably have already looked at it. The applicable address is one where you think someone would be living. Because we're trying to find people where they're actually at. If when a required notice that goes out comes back from the circuit clerk's office, within still the relevant period of inquiry, three to six months before the tax deed is issued, comes back and my client testified he knew about this, and it says forwarding address expired, not able to be delivered, at that point it is not reasonable to believe that that's an applicable address that he would even theoretically have to physically visit. You know, putting aside the fact that it was outside of the county, which I still believe the operative nature of that search being to find someone within the county is relevant, because that's what's required by the statute, and I don't believe the affidavit says, I'm trying to induce the court to say I did more than I actually did in order to find an address. When the address is right there on the tax rolls, that's why the statute says if they're not in the county, you mail a certified mailing to that address, and that's deemed proper service. That's deemed the level of due process that is required in order to effectuate service. And then on that fourth district case that I did just previously mention, that bail injury remore, in that case the judges found it important that that tax deed petitioner failed to inquire of public directories. My client testified, it's in the record, regarding his inquiries as to Belvidere Boone County public directories. That occurred, unlike in that case. Also visiting the property. That person did not visit the property. My client visited the property and conducting an internet search, which my client did, regarding the farmer search and those issues. My client is not some mastermind farmer as they would have you to believe. He's a gentleman farmer. That's what he's testified to. He doesn't plant. He also does the, I forget the term that he testified, but he splits the profits from the farm. He doesn't just rent. Sure, yeah, absolutely. So he's got some knowledge of farming. In the sense of, with gentleman farmers, everyone else does the work, he gets the grain, and then he can buy or sell it around the market. And he does have other farm property in Boone County? Yes, and the testimony was that my client had approached his other farmer, who was farming the McHenry County farm, as to whether or not he wanted to farm that first. So he didn't just go willy-nilly and just find one cow. It's not as egregious as my opposing counsel would have you believe. He did make other efforts, other inquiries, and that's in the record, as to whom he talked to, to try to locate a farmer. Mr. Kelm happened to be a preeminent farmer in the area. So I don't think it's that incredulous that he would be able to be found. And remember, at the time that that occurred was planting season. It had to be planted right then. Farmers are, hey, if there's anything I can rent and make money on, yes, now is the time. They're able to be found. They're pretty sedentary during the summer. They're working hard, but they pretty much sit at that point and watch the crops grow. Thank you. I'll be very brief. With respect to the inquiry about the exhibit that showed that Mr. Giordano had previously been sanctioned, it is Exhibit 8 to the trial court record. I cannot give the court the record site because the record has been checked out by Mr. Giordano's counsel, and we did not have access to it. But it is Exhibit 8 in the trial court, and it's a sanctions motion from the County of DuPage. With respect to the question of the appropriateness of imposing sanctions in these circumstances, this court in 2003, in a case called Hector v. Welch, said that the trial court's decision, and I'm paraphrasing, to deny sanctions on the basis of movements, actions reversed. The second district focused instead on the non-movement behavior and granted sanctions. Excusing and going on, and I don't want to just quote our brief, I think the court should also take a look at Ashley v. Scott, which is cited in our brief as a 1994 case. It comes to very much the same conclusions. Rule 137 is a critically important rule. It imposes a serious burden on counsel, but it also imposes a serious burden on parties who proceed pro se. Mr. Giordano is an experienced pro se litigant. He has admitted on the record that he has proceeded with respect to 33 to 35 petitions, plus he has litigated other matters extensively. And it's your position that he well knows the requirements of due process, that you have to conduct such an inquiry that you would try to actually find the person, and not just gloss over it? I think he knows it intellectually, but I also think he knows what he was saying. He knows what he wrote. He said he thought about going to the Rainbow Street address and chose not to. And then he wrote an affidavit in which he suggested he made inquiry at that address. So both as an intellectual matter and as a factual matter. Mr. Giordano knows what's required, and he knew precisely what he was doing. He was misleading the court. That's sanctionable. The court has no questions. I have nothing further. Thank you. We will be in recess until the next case.